

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**WILLIAM BOYD SWINSON,**

     Petitioner,

v.                              Civil Action No. **3:14CV100**

**DIRECTOR, DEPARTMENT OF
CORRECTIONS,**

     Respondent.

### REPORT AND RECOMMENDATION

William Boyd Swinson, a Virginia inmate proceeding <u>pro se</u>, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254 Petition," ECF No. 1) challenging his 2009 convictions in the Circuit Court of Chesterfield County (hereinafter "Circuit Court"). Swinson argues entitlement to relief on the following grounds:

Claim 1:   Insufficient evidence existed to convict Swinson.

Claim 2:   The Court of Appeals of Virginia erred in affirming Swinson's convictions.

Claim 3:   The Commonwealth suppressed material exculpatory evidence.

Claim 4:   Counsel rendered ineffective assistance by failing to file a motion for new trial or writ of error after discovering the <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) violation and by failing to raise the <u>Brady</u> violation on appeal.

Claim 5:   Counsel rendered ineffective assistance by failing to appropriately question victim Crowder Whitt about whether he could identify Swinson as the person who robbed him.

Claim 6:    Counsel rendered ineffective assistance by failing to require that the Commonwealth introduce the actual BB gun at trial not just a photograph depicting the gun.

Claim 7:    Counsel rendered ineffective assistance by failing to introduce a receipt that would support Swinson's alibi defense.

Claim 8:    Counsel rendered ineffective assistance by failing to introduce Swinson's bank statements that would have supported Swinson's alibi defense.

Claim 9:    Counsel rendered ineffective assistance by failing to request a continuance for the non-appearance of material witnesses.

Claim 10:   Counsel rendered ineffective assistance by failing to obtain certain phone records that would support Swinson's alibi defense.

Claim 11:   Counsel rendered ineffective assistance by failing to elicit testimony from Swinson's physician to demonstrate that Swinson had a physical disability that would make it impossible for him to run and climb a fence.

Claim 12:   Counsel rendered ineffective assistance by failing to "bring to light the accurate measurements from the crime scene . . . ." (§ 2254 Pet. Attach. 6, ECF No. 1-1.)[1]

Claim 13:   Counsel rendered ineffective assistance by failing to file a motion of intent to introduce evidence to establish an alibi defense.

Claim 14:   Counsel rendered ineffective assistance by failing to question victim Rose Whitt about whether she could identify Swinson as the person who robbed her.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system in citations to the Attachment to the § 2254 Petition. The Court corrects the capitalization in the quotations from Swinson's submissions.

Respondent has moved to dismiss the action (ECF No. 9). The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that Respondent's Motion to Dismiss be GRANTED and that the § 2254 Petition be DISMISSED.

## A.   Procedural History

After a bench trial, the Circuit Court convicted Swinson of statutory burglary with intent, two counts of robbery, and three counts of use of a firearm in the commission of a felony. The Circuit Court sentenced Swinson to an active term of twenty-eight years of incarceration. Commonwealth v. Swinson, Nos. CR09F000-85-01 to -06, at 1-2 (Va. Cir. Ct. Sept. 21, 2009).

Swinson appealed, arguing that insufficient evidence existed to sustain his convictions. Swinson v. Commonwealth, No. 2411-09-2, at 1 (Va. Ct. App. Aug. 3, 2010). The Court of Appeals of Virginia affirmed. Id. at 1, 7. Thereafter, the Supreme Court of Virginia refused Swinson's petition for appeal. Swinson v. Commonwealth, No. 101669, at 1 (Va. Jan. 20, 2011).

Swinson filed a petition for writ of habeas corpus in the Circuit Court raising claims similar to Claims 3 through 14 in the present § 2254 Petition. See Memorandum of Law in Support of Habeas Corpus at 8-56 (as paginated by the Circuit Court), Swinson v. Clarke, No. CL12HC-91 (Va. Cir. Ct. filed Dec. 20, 2011.) The Circuit Court denied Swinson's habeas petition.

Swinson v. Clarke, No. CL12HC-91, at 15 (Va. Cir. Ct. July 19, 2013). The Supreme Court of Virginia refused Swinson's petition for appeal. Swinson v. Commonwealth, No. 131589, at 1 (Va. Jan. 9, 2014).

**B. Analysis**

**1. Exhaustion and Procedural Default (Claim 3)**

The exhaustion requirement "'is rooted in considerations of federal-state comity,'" and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine

provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

The Virginia courts refused to review the substance of Claim 3 in the present § 2254 Petition, because Swinson could have, but failed to raise this claim on direct appeal. Swinson v. Clarke, No. CL12HC-91, at 4 (Va. Cir. Ct. July 19, 2013) (citing Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974);

Elliott v. Warden, 652 S.E.2d 465, 467 (Va. 2007)).[2] Slayton constitutes an adequate and independent state procedural rule when so applied. See Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Thus, Swinson procedurally defaulted Claim 3. To the extent that Swinson asserts that ineffective assistance of counsel constitutes cause to excuse his default of Claim 3, that contention lacks merit for the reasons set forth infra Part B.4. Accordingly, it is RECOMMENDED that Claim 3 be DISMISSED.

2. Applicable Constraints upon Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus

---

[2] Because the Supreme Court of Virginia summarily refused Swinson's petition for appeal, the Court presumes that the Supreme Court of Virginia refused the claims for the reasons stated by the Circuit Court. See White v. Johnson, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

### 3. Sufficiency of the Evidence (Claims 1 and 2)

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support

8

a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.

In Claims 1 and 2, Swinson contends that insufficient evidence existed to convict him because "the circumstantial evidence identifying the petitioner as the perpetrator of the offenses is not sufficient to exclude every reasonable hypothesis of innocence." (Mem. Supp. § 2254 Pet. 4, ECF No. 2.) Swinson argues that the two elderly victims, Rose Whitt and Crowder Whitt, never identified Swinson as the robber, "an essential element of the offenses." (Id. at 5.) Swinson contends that Crowder Whitt's description of the robber "as short and stumpy" demonstrates that the robber "must have been somebody other than the Petitioner" who is "6'1" tall and weighed 350 pounds." (Id. at 6.) Swinson also points to Rose Whitt's identification of a person other than Swinson as the robber to demonstrate that he was not the robber. (Id.)

The Court of Appeals of Virginia aptly summarized the evidence of Swinson's guilt as follows:

> On April 8, 2008, at approximately 11:00 a.m., appellant's sister arrived at the home of her landlords, the victims, C.W. and R.W., to pay her monthly rent in cash. When the sister left the victims' home, she stopped at appellant's home, a duplex at 6144 Strathmore Road, a short distance from the victims' home. The sister told appellant's wife that she had just paid her rent to the victims. During this conversation, appellant was somewhere in the house.

9

The sister routinely paid in cash and placed the money on the victims' kitchen table.

About ten to fifteen minutes after the sister left the victims' house, C.W. was sitting in the kitchen with his wallet, several credit cards, and a portable phone on the kitchen table. Suddenly, a man burst through the back screen door into the kitchen. C.W. described the man as a "[s]hort and stumpy" white male, in his forties, and wearing a hooded sweatshirt with the hood pulled up. His face was not covered. Neither victim ever identified appellant as the intruder. Later, R.W. identified another individual as the gunman but he was later dismissed as a suspect. R.W., in a subsequent television interview, described the intruder as "a man in his 20's with a hooded sweatshirt." The victims had never seen the intruder before. At trial, C.W. testified that only those people familiar with the couple would know that they did not use the front door and that they normally asked visitors to come to the back door.

The intruder pointed a black pistol at R.W.'s chest, telling her that he wanted their "money." The gunman first looked at the kitchen table. When the victims told the gunman that they did not have any money, he demanded R.W.'s purse.

The intruder, pointing his gun at C.W., took C.W.'s wallet, credit cards, and a phone from the table. He then followed R.W. through the house as she looked for her purse. After finding R.W.'s black purse, and taking a cell phone and a camera, the gunman walked into the yard with the stolen items. He stopped to look through the purse and then walked towards Strathmore Road. R.W. called 911, then followed the intruder in her automobile.

Police Officer Encinas arrived at the victims' home less than one minute after receiving the report of the robbery. C.W. pointed him in the direction that the gunman and his wife had gone. Officer Encinas located R.W., who directed the officer's attention to a white male, approximately three hundred feet away, wearing a blue hooded sweatshirt and blue sweatpants. The suspect was climbing an embankment to scale a fence behind the Strathmore residences. The gunman was less than one-tenth of a mile from the victims' home. The officer made no facial identification.

The suspect scaled the fence, carrying a gun in his right hand. After he cleared the fence, the

gunman bent over and did "something in the leaves with his hands." Officer Encinas noticed that when the gunman stood up he no longer had a gun in his hand but he was still carrying a black purse. The gunman walked away towards the brick duplexes on Strathmore Road. Officer Encinas described the man he saw jumping over the fence as a "heavyset" "white male," wearing a hooded sweatshirt with the hood up.[3]

Officer Encinas lost sight of the gunman. A K-9 unit arrived and tracked the scent from the point where the gunman jumped over the fence. The tracking dog led police to an area less than two feet from where Officer Encinas had seen the gunman crouched down. There, in the backyard of the brick duplex house at 6144 Strathmore Road, appellant's residence, officers recovered C.W.'s credit cards, his home phone, and a black BB gun. The tracking dog continued to follow the scent for another fifty yards. The last location where the dog was able to follow the scent was in appellant's backyard.

C.W. identified the black BB gun recovered from appellant's backyard as "similar" to the weapon displayed during the robbery. He also identified the recovered credit cards, camera, and cell phone as those taken during the robbery. Appellant's DNA was found on the BB gun.

Appellant denied any involvement in the robbery. No fingerprint evidence implicated appellant in the offenses. A search of appellant's residence six months after the incident revealed no items stolen from the victims.

Appellant was convicted of two counts of robbery, statutory burglary, and three counts of use of a firearm in the commission of a felony.

Swinson v. Commonwealth, No. 2411-09-2, at 2-4 (Va. Ct. App.

Aug. 3, 2010) (alteration in original) (footnote number

altered).

---

[3] The police briefly detained a different suspect, not appellant, in the general vicinity, who was later released.

In finding sufficient evidence to convict Swinson and rejecting his claim, the Court of Appeals of Virginia explained:[4]

> Appellant's challenge to the sufficiency of the evidence is limited to whether he was the perpetrator, not whether the offenses occurred.
>
> . . . .
>
> The thrust of appellant's sufficiency argument is that neither of the victims identified him as the gunman. Appellant further points to R.W.'s misidentification of a suspect, and the inaccurate description of the perpetrator given by both victims. We agree that there was no direct evidence identifying appellant as the gunman, but appellant's argument ignores the circumstantial evidence adduced by the Commonwealth.
>
> . . . .
>
> We first note that R.W.'s misidentification of another suspect, and any inaccurate description of the intruder, concerns the credibility of the witnesses and the weight afforded the victim's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730,732 (1995). See Peterson v. Commonwealth, 225 Va. 289, 295, 302 S.E.2d 520, 524 (1983) (stating that the credibility of witnesses and the weight to be given identification testimony is a matter for the jury).
>
> We review the facts "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn v. Commonwealth, 49 Va.

---

[4] Swinson claims that the Virginia Court of Appeals erred in affirming his conviction under the Virginia standard for sufficiency, because the evidence failed to exclude every reasonable hypothesis of his innocence. On federal habeas review of a state conviction, Jackson provides the only appropriate standard of review for challenges to the sufficiency of the evidence. See Jackson, 443 U.S. and 324 (explaining that "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt"). The Court omits any discussion or reference to the Virginia standard.

App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). This standard requires us to "give due weight to inferences drawn from those facts by resident judges . . . ." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation omitted).

It was reasonable for the fact finder to conclude the intruder knew the victims' habits. He entered the backdoor, indicating he was aware of the victims' pattern of using the back door as the sole entry point. When the perpetrator entered and demanded money, he first looked at the kitchen table, where appellant's sister routinely deposited her rent money. It can further be inferred that appellant knew that the victims had recently received cash from appellant's sister. The intruder broke into the victims' home between ten and fifteen minutes after appellant's sister left the house and told appellant's wife that she had just paid her rent. Appellant was present somewhere in the house when that statement was made. The intruder did not look for jewelry or other valuables, only cash, indicating the intruder knew cash was on the premises.

After the robbery, the intruder ran towards appellant's house and discarded some of the stolen items, including the gun used in the robbery, in appellant's backyard. Appellant's DNA was found on the BB gun. While there was testimony appellant's [eight or nine-year-old] stepson owned a toy gun, there was no testimony the black BB gun was the one owned by the stepson. It must be remembered that a "similar" gun was seen in the hands of the gunman just moments before the police recovered it on the ground.

The fact finder rejected appellant's explanation of why his DNA was found on the gun. DNA evidence clearly indicates at some point in time, appellant had touched the BB gun. Other evidence proved that the gunman had a gun of like appearance in his possession just moments before the gun was discovered in appellant's backyard. . . .

From the intruder's entry into victims' residence, until the gun and stolen items were found in appellant's backyard, there had been an unbroken sequence pointing to appellant as the gunman. R.W. followed the intruder as he left the house. She pointed out the gunman to the officer who followed the gunman over the embankment and fence. He saw the

gunman reach into a pile of leaves where the weapon and stolen items were recovered.
    We therefore conclude that the trial court did not err in finding the circumstantial evidence sufficient to convict appellant of the crimes charged.

Id. at 4-7 (third omission in original). Even without a positive eyewitness identification of Swinson as the perpetrator, the Circuit Court found the testimony of Officer Encinas and both victims credible, and supported a finding beyond a reasonable doubt that Swinson was the person who robbed the victims. Thus, after reviewing the evidence and credibility determinations "in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson, 406 U.S. at 362). For the same reason, any claim that the Court of Appeals of Virginia erred in affirming Swinson's convictions lacks merit. Accordingly, it is RECOMMENDED that Claims 1 and 2 be DISMISSED.

    4. **Ineffective Assistance of Counsel (Claims 4 - 14)**

    To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall

14

'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).   The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.   Id. at 697.

In Claim 4, Swinson argues that counsel rendered ineffective assistance "for her failure to file a motion for a new trial, to bring the Brady violation up on appeal[,] or to file a writ of err[or] after she discovered that the Commonwealth had suppressed exculpatory evidence . . . ."   (Mem. Supp. § 2254 Pet. 16.)

Brady and its progeny "require[ ] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011).   Accordingly, in order to obtain relief under Brady, a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and

15

(3) demonstrate that the suppression was material." Id. (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)).

Swinson identifies this purported material, exculpatory evidence as "the police summary report written by Officer Encinas which contained the eye-witness statement of Barbara Santos which should have been given to the defense." (Mem. Supp. § 2254 Pet. 16.) Swinson claims that "Ms. Santos's [statement] establishe[d] that the suspect was still in possession of his gun after Officer Encinas lost sight of him running towards Strathmore Road" and "establishe[d] that the BB gun found in Petitioner's back yard was not the gun used in the robbery and that someone other than the Petitioner committed the robbery." (Id. at 17 (spelling corrected).) Swinson contends that counsel learned of Ms. Santos's statement to police when she read the presentence report. (Id.)

In rejecting this claim, the Circuit Court explained:

> The Court finds the petitioner has failed to show that Santos' statement was material and exculpatory, as he must to prove he was prejudiced by trial counsel's failure to raise this issue in the trial court. . . . The petitioner has identified Santos' statement as only that she witnessed the police pursuit, not that she had exculpatory information to show the petitioner was not the perpetrator of the offense.
> The petitioner has not offered an affidavit from Santos that demonstrates either that she would have testified on his behalf, or that she would have offered favorable testimony. The Court finds this failure to proffer fatal to his claim, as, without this information, the petitioner cannot meet his

> burden of showing he was prejudiced by trial counsel's
> failure to raise this Brady claim.  Burger, 483 U.S.
> at 793; Muhammad, 274 Va. at 19, 646 S.E.2d at 195.
> Accordingly, the Court finds the petitioner cannot
> meet either prong of the demanding Strickland
> standard.

Swinson, No. CL12HC-91, at 14 (Va. Cir. Ct. July 19, 2013).  The

Court discerns no unreasonable application of the law and no

unreasonable determination of the facts.  See 28 U.S.C.

§ 2254(d)(1)-(2).

The Presentence Report that Swinson contends alerted him to

the existence of material and exculpatory evidence provided:

> Officer Encinas went back and interviewed Barbara
> Santos who stated that she was coming down Strathmore
> Road from the direction of DSCR Logistics when she saw
> a white man waving what she thought was a gun.  She
> stated she wasn't going to stop and she floored her
> vehicle.  Barbara Santos stated that she pulled into
> her driveway and called 911.  Ms. Santos stated that
> she saw a police officer, which was in fact Officer
> Encinas.  Ms. Santos said she saw a red pickup truck
> drive down Strathmore Road, two to three houses
> further south and a male dressed in all blue get out
> of the vehicle and the vehicle took off at a high
> speed.  Ms. Santos saw the suspect run at a very slow
> pace from the scene.  Ms. Santos said she never saw
> the person who was riding in the red pickup get into
> this vehicle, but she states it was the person she saw
> waiving the gun.

Presentence Report at 2-2, Commonwealth v. Swinson,

Nos. CR09F000-85-01 through 06 (Va. Cir. Ct. filed Sept. 10,

2009).  Counsel explains that "[t]he identity (not statement per

se) of Santos was first disclosed in the pre sentence

report . . . ."  See Motion to Dismiss Ex. 6, at 2, Swinson v. Clarke, No. CL12HC-91 (Va. Cir. Ct. filed Feb. 28, 2012).

The Court fails to discern how this vague, confusing account "establishe[d] that the suspect was still in possession of the gun after Officer Encinas lost sight of him running towards Strathmore Road." (Mem. Supp. § 2254 Pet. 17.) The report contained no specific information about where Ms. Santos saw "a white man waving what she thought was a gun." See Presentence Report at 2-2, Swinson, Nos. CR09F000-85-01 to -06. In addition, counsel wisely eschewed advancing a post-conviction or appellate challenge to Swinson's convictions based on the third-hand account of Ms. Santos summarized in the Presentence Report. Contrary to Swinson's assertion, the report provided no material, exculpatory evidence that Swinson was not the robber. Thus, counsel cannot be faulted for failing to challenge the conviction on this ground. Counsel could have reasonably concluded that any testimony Ms. Santos may have provided would have had little impact on the Circuit Court's finding of guilt. Additionally, counsel also could have reasonably concluded that Ms. Santos's testimony would have provided further support that Swinson was the robber. Based on the summary in the Presentence Report, Ms. Santos likely would have testified about why the suspect seemingly disappeared, potentially could have identified Swinson as the robber, and based on her statement that she "saw

18

the suspect run at a very slow pace from the scene," further confirmed that Swinson, a 350-pound man, was the suspect. Presentence Report at 2-2, Swinson, Nos. CR09F000-85-01 to -06.

Swinson also fails to demonstrate any prejudice from counsel's failure to challenge Swinson's conviction in a post-trial motion or on appeal based on the summary of Officer Encinas's investigation. In light of the substantial circumstantial evidence demonstrating that Swinson was the robber, Swinson fails to establish that, but for counsel's error, the Circuit Court would have found him not guilty. Accordingly, it is RECOMMENDED that Claim 4 be DISMISSED.

In Claims 5 and 14, Swinson faults counsel for failing to properly cross-examine the victims, Rose and Crowder Whitt, about whether they could positively identify Swinson as the robber. In rejecting these claims, the Circuit Court explained:

> The record demonstrates trial counsel called Rose Whitt as a defense witness, and elicited on direct examination that the victim had identified another suspect as the perpetrator from photographs she found on the sex offender registry. Trial counsel used a transcript of a conversation Rose Whitt had with a television reporter to refresh her recollection of the physical description she had given to that reporter. On direct examination by the Commonwealth, Crowder Whitt testified he did not get a good look at the perpetrator, and that he could "not really" tell the Court whether or not the petitioner was the perpetrator. On cross-examination, trial counsel elicited from Crowder Whitt that police never asked him to identify any suspects in the case, and that he had not seen any photographs of suspects.

> Trial counsel did not ask any additional
> questions regarding the identification, because she
> did not want to give the victims the opportunity to
> positively identify the petitioner as the perpetrator
> at trial. Developing a defense strategy for trial,
> which necessarily includes deciding the questions to
> ask the witnesses at trial, falls solely within
> defense counsel's discretion. Gonzalez v. United
> States, 553 U.S. 242, 249 (2008). Cross-examination
> is a matter of trial strategy which cannot be second
> guessed in a collateral habeas proceeding. Johnson v.
> Riddle, 222 Va. 428, 433, 281 S.E.2d 843, 846 (1981).

Swinson, No. CL12HC-91, at 5. The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2).

Swinson demonstrates neither deficiency of counsel nor resulting prejudice. Counsel elicited testimony from both victims from which a trier of fact could infer that neither victim could affirmatively identify Swinson as the robber. Swinson fails to explain how any further questioning of the victims would have reinforced that inference. Accordingly, it is RECOMMENDED that Claims 5 and 14 be DISMISSED.

In Claim 6, Swinson faults counsel for "fail[ing] to require that the actual BB gun recovered from the Defendant's back yard be shown in court . . . instead of allowing the Commonwealth to show a photograph of a gun . . . ." (Mem. Supp. § 2254 Pet. 21.) Swinson argues that the photograph failed to accurately depict the size of the gun and that if Mr. Whitt had seen the actual gun, he would have realized it was not the gun

the robber used.  (Id.)  Swinson argues that Mr. Whitt testified that the gun used by the robber "was medium in size" but that "[t]he BB gun found in [Swinson's] back yard [was] very large . . . ."  (Id.)

In finding that this claim lacked merit, the Circuit Court concluded "that tactical decisions, such as deciding which objections to raise at trial, are part of the development of the defense strategy and lie solely within the province of counsel." Swinson, No. CL12HC-91, at 6-7.  This Court agrees.  The evidence established that the photograph of the firearm depicted the firearm that police recovered along with other stolen items from Swinson's back yard.  Thus, counsel reasonably eschewed objecting to the introduction of the photograph of the gun. Swinson also fails to demonstrate how requiring the Commonwealth to introduce the actual firearm would have altered the victim's identification of the BB gun.  At most, the victim testified that the photograph depicted a firearm "similar to" the firearm used by the robber.  (See June 29, 2009 Tr. 28.)  Swinson demonstrates no deficiency of counsel or resulting prejudice. Accordingly, it is RECOMMENDED that Claim 6 be DISMISSED.

In Claims 7, 8, 10, and 13, Swinson faults counsel for failing to introduce certain evidence that would purportedly support Swinson's alibi defense.  Specifically, in Claim 7, Swinson claims that a "purchase order receipt from Omega [Meats]

dated April 8, 2008 . . . [would] show that the Petitioner was approximately seven (7) miles away from the crime scene when the robbery took place." (Mem. Supp. § 2254 Pet. 24 (spelling corrected) (citation omitted).) In Claims 8 and 10, Swinson faults counsel for failing to introduce bank and phone records further supporting Swinson's contention that he was at Omega Meats at the time of the robbery and demonstrating that, based on his bank balance, Swinson had no financial incentive to rob the victims. Similarly, in Claim 13, Swinson faults trial counsel for failing to file a motion of intent to introduce evidence to establish an alibi and, subsequently, failing to offer any of Swinson's alibi evidence at trial.

In rejecting Claim 7 of the instant § 2254 Petition, the Circuit Court explained:

> The petitioner has not produced a copy of this [Omega Meats] receipt for the Court; without this copy, the Court cannot determine whether this receipt would have proved the things the petitioner claims. Burger [v. Kemp, 483 U.S. 776, 793 (1987)]; Muhammad [v. Warden, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007)]. The Court further finds trial counsel's interview with the company representative suggested the receipt may have been fraudulent, as the representative could not authenticate it, preventing trial counsel from introducing it at trial. Smith v. Commonwealth, 280 Va. 178, 183-84, 694 S.E.2d 578, 580-81 (2010) (discussing the requirements for introducing business records at trial by a custodian of the record, who could identify the document as one made in the regular course of business, and that such identification provided the necessary showing of trustworthiness that allowed the admission of the document over a hearsay objection). The Court finds

the petitioner cannot meet either prong of the demanding <u>Strickland</u> standard.

<u>Swinson</u>, No. CL12HC-91, at 7.

In finding that Claim 8 of the instant § 2254 Petition

lacked merit, the Circuit Court explained:

> The petitioner has not produced a copy of these [bank] statements for the Court; without these copies, the Court cannot determine whether these statements would have proved the things the petitioner claims. <u>Burger</u>, 483 U.S. at 793; <u>Muhammad</u>, 274 Va. at 19, 646 S.E.2d at 195. Further, the Court finds trial counsel examined the statements, and, contrary to the petitioner's assertions in his habeas corpus petition, the statements showed he maintained modest balances, had at least one overdraft within one month of the offense, and could not establish either the time of the transactions or whether those transactions were done in person. The Court finds the petitioner cannot show under the demanding <u>Strickland</u> standard either that counsel's performance was lacking, or that he was prejudiced as a result of counsel's actions.

<u>Id.</u> at 8.

Finally, in explaining and rejecting Claims 10 and 13 of

the present § 2254 Petition, the Circuit Court found:

> The petitioner claims [the phone] records would have shown the petitioner was at Omega Meats at the time of the robbery using their phone to call his home and his wife's cell phone, and would have substantiated the petitioner's alibi. . . . [P]etitioner [also] alleges trial counsel was ineffective for failing to file a motion of intent to introduce evidence to establish an alibi for the petitioner, pursuant to Rule 3A:11(c), which the petitioner believed was going to be the primary defense at trial, and for failing to offer any alibi evidence at trial. The Court finds these claims without merit.
> The petitioner has not produced a copy of these records for the Court; without these copies, the Court cannot determine whether these records would have

proved the things the petitioner claims. Burger, 483 U.S. at 793; Muhammad, 274 Va. at 19, 646 S.E.2d at 195. The Court further finds trial counsel endeavored to investigate and obtain the phone records, filing subpoenas duces tecum requesting phone records from Comcast and AT&T; however, these records did not show the identity of the caller or the location of the caller on mobile phones. The Court credits trial counsel's determination that these records were neither persuasive nor relevant to trial. The Court holds that such tactical decisions, such as what evidence to present at trial, are part of the development of the defense strategy and lie solely within the province of counsel. Gonzalez [v. United States, 553 U.S. 242, 249 (2008)]; Taylor [v. Illinois, 484 U.S. 400, 418 (1998)]; accord Townes [v. Com., 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987)].

The Court further finds trial counsel diligently investigated the petitioner's alibi, but could not produce any evidence to support the petitioner's claims. The petitioner's wife told counsel, two days prior to trial, that she could not testify truthfully in his defense, told counsel about the location of the stolen property, and related several damaging allegations to petitioner's probation officer. Trial counsel shared the fruits of the investigation with the petitioner before trial, and the petitioner knew that the alibi defense could not be presented.

The Court holds the petitioner cannot demonstrate any prejudice from trial counsel's decision not to introduce an alibi defense unless he can show that the "evidence as to alibi covering the time at or before the crime is sufficient to render the presence of an accused impossible or highly improbable." Abbott v. Peyton, 211 Va. 484, 486-87, 178 S.E.2d 521, 523 (1971). Plainly, based on the information presented to counsel before trial, particularly that one of the defense witnesses could not testify truthfully in his behalf, the Court finds trial counsel's decision not to proceed with this evidence was objectively reasonable.

The Court holds the petitioner cannot meet his burden of showing under the demanding Strickland standard either that counsel's performance was lacking, or that he was prejudiced as a result of counsel's actions.

Id. at 10-11 (first alteration in original).  The Court discerns no unreasonable application of the law and no unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2).

For the first time in his § 2254 Petition, Swinson submits the referenced Omega Meat receipt and bank records, neither of which support Swinson's alibi that he was at Omega Meats at the time of the robbery.[5]  (See Mem. Supp. § 2254 Pet. Exs. B, C2.) Counsel wisely eschewed advancing an alibi defense that, through her thorough investigation she learned, not only lacked factual support but appeared to be demonstratively false.  Cf. Boseman v. Bazzle, 364 F. App'x 796, 809-10 (4th Cir. 2010) (explaining that counsel cannot be faulted for failing to present evidence "'that . . . does not exist'" (quoting Lewis v. Horn, 581 F.3d 92, 114 (3d Cir. 2009))).[6]  Thus, Swinson demonstrates neither

---

[5]  Contrary to Swinson's contention, the receipt from Omega Meats provides no time for his purchase on April 8, 2008 and states that Swinson paid for his purchase in cash.  The Court fails to discern why Swinson's bank statement would reflect any debit or other transaction when Swinson allegedly paid for the meat in cash.  Moreover, Swinson's bank statement also provides no time for his transactions other than the date.

[6]  For the first time in his Objections to the Motion to Dismiss, Swinson attaches a letter in which Swinson's wife alleges she never told counsel "that Boyd committed the robbery or where anything was."  (Mem. Supp. § 2254 Pet. Ex. U, at 1.)  Swinson's wife never signed this letter, much less swore to the letter under penalty of perjury.  Nevertheless, even if the Court were to credit Swinson's wife's statement over counsel's, the Court maintains that counsel's determination not to advance the flimsy alibi defense was imminently reasonable.

deficiency of counsel nor resulting prejudice.  Accordingly, it
is RECOMMENDED that Claims 7, 8, 10, and 13 be DISMISSED.

In Claim 9, Swinson argues that counsel rendered
ineffective assistance by "fail[ing] to request a continuance
for the non-appearance of a subpoenaed material witness inducing
the Petitioner to proceed absent Celeste Thomas who was
subpoenaed to validate a [receipt] from Omega Meats."  (Mem.
Supp. § 2254 Pet. 28.)  Swinson claims that counsel told him on
the morning of trial that Celeste Thomas would not be available
that day to testify.  (Id. at 29.)  In finding this claim lacked
merit, the Circuit Court explained:

> The petitioner has not supplied an affidavit from
> this witness showing either that she would have
> testified, or that she would have offered favorable
> testimony on the petitioner's behalf.  The Court finds
> this failure to proffer is fatal to his claim.
> Burger, 483 U.S. at 793; Muhammad, 274 Va. at 19, 646
> S.E.2d at 195.
> The Court further finds trial counsel did contact
> Celeste Thomas, and this witness could not recall the
> events the petitioner alleged had occurred, and
> expressed doubt about whether the petitioner's account
> of the events were credible.  When trial counsel
> attempted to investigate the petitioner's alibi
> defense, she could not substantiate his statements
> regarding his whereabouts on the day of the crime.
> Additionally, the Court finds trial counsel's
> decision not to call a witness on the petitioner's
> behalf is entitled to "enormous deference."  See
> Chandler v. United States, 218 F.3d 1305, 1314 (11th
> Cir. 2000) (en banc) ("calling some witnesses and not
> others is the epitome of a strategic decision");
> United States v. Kozinski, 16 F.3d 795, 813 (7th Cir.
> 1994) (decision not to call witness entitled to
> "enormous deference" and decision was objectively
> reasonable in any event).  Given that Thomas offered

no favorable evidence for the petitioner, the Court holds trial counsel's decision not to call her at trial was objectively reasonable.

Accordingly, the Court finds the petitioner has filed to meet his burden under the demanding Strickland standard to show either that counsel's performance was lacking, or that he was prejudiced as a result.

Swinson, No. CL12HC-91, at 8-9. The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2).

As previously discussed, counsel thoroughly investigated Swinson's alibi defense and found it not only lacked factual support, but was likely false. Counsel cannot be faulted for failing to request a continuance for a witness who would not provide favorable testimony to the defense. For the same reason, Swinson fails to demonstrate any prejudice from counsel's failure to request a continuance. Counsel explained that, after interviewing Celeste Thomas, counsel determined that Ms. Thomas would not testify as Swinson suggested, and counsel made the wise and strategic decision not to request a continuance in order for her to testify. Cf. Byram v. Ozmint, 339 F.3d 203, 209-10 (4th Cir. 2003) (finding no ineffective assistance where counsel adequately investigated and made strategic decision not to present evidence that could have harmed the defense). Swinson fails to demonstrate that counsel

27

rendered ineffective assistance, and, accordingly, it is RECOMMENDED that Claim 9 be DISMISSED.

In Claim 11, Swinson contends that counsel failed to elicit testimony from Swinson's physician, Dr. Barrington Bowser, and failed to submit updated medical records that would demonstrate that Swinson had a physical disability that would make it impossible for him to scale the fence as described by Officer Encinas. In rejecting this claim, the Circuit Court explained:

> Trial counsel interviewed Dr. Bowser prior to trial, and determined that Dr. Bowser would testify that the petitioner could have accomplished the physical task of scaling the fence. Trial counsel believed Dr. Browser would have been a hostile witness, and made the strategic decision to refuse to call him as a witness.
> The Court finds this tactical decision is part of the development of the defense strategy and lie solely within the province of counsel. Gonzalez, 553 U.S. at 249; Taylor, 484 U.S. at 418; accord Townes, 234 Va. at 320, 362 S.E.2d at 657. The Court further finds the petitioner has not offered any evidence to substantiate his claim that any favorable medical testimony would have available to his defense at trial. Muhammad, 274 Va. at 16, 646 S.E.2d at 193 (holding a claim that trial counsel should have presented a mental health defense requires the petitioner to "proffer the records from [ ] mental health exams" in order to "demonstrate that the mental health evidence" was both "available" at the time of trial and "would have aided in his defense"). Accordingly, the Court holds the petitioner cannot show under the demanding Strickland standard either that counsel's performance was lacking, or that he was prejudiced as a result of counsel's actions.

Swinson, No. CL12HC-91, at 11-12 (alteration in original). The Court discerns no unreasonable application of the law and no

28

unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2).

Counsel submitted Swinson's medical records during the defense case that indicated that Swinson had a total bilateral hip replacement in 2002. (June 29, 2009 Tr. 106). Thus, the trier of fact could infer that Swinson may have had some physical limitations. Again, counsel wisely eschewed calling Dr. Bowser who would have potentially hurt the defense by testifying that Swinson's physical limitations would not have prevented him from climbing the fence. Thus, counsel was not deficient for failing to call a witness that could hurt, not help, Swinson's defense. Accordingly, Swinson demonstrates no deficiency of counsel or resulting prejudice, and it is RECOMMENDED that Claim 11 be DISMISSED.

In Claim 12, Swinson argues that "counsel was ineffective because she failed to bring to light the accurate measurements from the crime scene, in particular, the distance, [and] landmarks associated with the flight path from the victim's home to the place where the perpetrator eluded a police pursuit." (Mem. Supp. § 2254 Pet. 40.) Swinson faults counsel for "allow[ing] Officer Encinas" to describe the distance from the Crowder's home to the fence as one-tenth of a mile. (Id.) Swinson argues that Officer Encinas purposely "down-play[ed] the actual distance . . . because he knew before trial that the

Petitioner has physical disabilities which would have made it improvable that it was the Petitioner that he was chasing." (Id. at 40-41.)   Swinson contends that actual distance was four-tenths of a mile.   (Id. at 41.)

     In rejecting this claim, the Circuit Court explained:

>      The Court finds the petitioner failed to allege how the officer's opinion as to the distance was either improbable or inaccurate, and that counsel had no basis for objection on these grounds.   The Court finds this claim fails to demonstrate either prong of the demanding Strickland test.

Swinson, No. CL12HC-91, at 13.     The Court discerns no unreasonable application of the law and no unreasonable determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).

     Swinson fails to demonstrate how this purported discrepancy in distance would cast doubt on Officer Encinas's credible testimony that he observed the robber scale a fence close to the victims' home.   Additionally, Officer Encinas had a photograph of the area in question and circled on the photograph both where the robbery occurred and where he observed the robber scaling the fence.   (June 29, 2009 Tr. 35-36.)   Thus, counsel reasonably eschewed advancing the challenges Swinson urges here.   (Mem. Supp. § 2254 Pet. 40.)   Moreover, as previously discussed, contrary to Swinson's assertion, no evidence existed demonstrating that Swinson had a disability that would prevent him from scaling the fence.   Swinson fails to demonstrate

deficiency or resulting prejudice from counsel's failure to introduce measurements of the crime scene. Accordingly, it is RECOMMENDED that Claim 12 be DISMISSED.

## D.  Conclusion

Accordingly, it is RECOMMENDED that the Court GRANT the Motion to Dismiss (ECF No. 9) and DENY Swinson's 28 U.S.C. § 2254 Petition.

Swinson is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. See Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. See Carr v. Hutto, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Swinson and counsel of record.

                          /s/
                          _____
                          Roderick C. Young
                          United States Magistrate Judge

Richmond, Virginia
Date: 1|29|15

31