IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



WILLIAM BOYD SWINSON,

     Petitioner,

v.                               Civil Action No. 3:14CV100

DIRECTOR, DEPARTMENT OF
CORRECTIONS,

     Respondent.

## MEMORANDUM OPINION

William Boyd Swinson, a Virginia inmate proceeding pro se, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254 Petition," ECF No. 1) challenging his 2009 convictions in the Circuit Court of Chesterfield County (hereinafter "Circuit Court"). On January 29, 2015 the Magistrate Judge issued a Report and Recommendation recommending that the Court grant Respondent's Motion to Dismiss. Swinson has filed a rambling thirty-page document "address[ing] some but not all of the grounds in his original petition" and "all of the specific legal and factual deficiencies of the Magistrate Judge's findings." (Objs. 1, ECF No. 23.)[1] For the reasons that follow, Swinson's objections will be overruled, the Motion to Dismiss (ECF No. 9) will be granted, Swinson's Motion for Discovery (ECF No. 16) and

---

[1] The Court corrects the capitalization in the quotations from Swinson's objections.

Motion for Evidentiary Hearing (ECF No. 17) will be denied, and the action will be dismissed.

## I.   BACKGROUND

The Magistrate Judge made the following findings and recommendations:

> Swinson argues entitlement to relief on the following grounds:
>
> Claim 1:   Insufficient evidence existed to convict Swinson.
> Claim 2:   The Court of Appeals of Virginia erred in affirming Swinson's convictions.
> Claim 3:   The Commonwealth suppressed material exculpatory evidence.
> Claim 4:   Counsel rendered ineffective assistance by failing to file a motion for new trial or writ of error after discovering the Brady v. Maryland, 373 U.S. 83 (1963) violation and by failing to raise the Brady violation on appeal.
> Claim 5:   Counsel rendered ineffective assistance by failing to appropriately question victim Crowder Whitt about whether he could identify Swinson as the person who robbed him.
> Claim 6:   Counsel rendered ineffective assistance by failing to require that the Commonwealth introduce the actual BB gun at trial not just a photograph depicting the gun.
> Claim 7:   Counsel rendered ineffective assistance by failing to introduce a receipt that would support Swinson's alibi defense.
> Claim 8:   Counsel rendered ineffective assistance by failing to introduce Swinson's bank statements that would have supported Swinson's alibi defense.
> Claim 9:   Counsel rendered ineffective assistance by failing to request a continuance for the non-appearance of material witnesses.

2

Claim 10: Counsel rendered ineffective assistance by failing to obtain certain phone records that would support Swinson's alibi defense.

Claim 11: Counsel rendered ineffective assistance by failing to elicit testimony from Swinson's physician to demonstrate that Swinson had a physical disability that would make it impossible for him to run and climb a fence.

Claim 12: Counsel rendered ineffective assistance by failing to "bring to light the accurate measurements from the crime scene . . . ." (§ 2254 Pet. Attach. 6, ECF No. 1-1.)[2]

Claim 13: Counsel rendered ineffective assistance by failing to file a motion of intent to introduce evidence to establish an alibi defense.

Claim 14: Counsel rendered ineffective assistance by failing to question victim Rose Whitt about whether she could identify Swinson as the person who robbed her.

Respondent has moved to dismiss the action (ECF No. 9). The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that Respondent's Motion to Dismiss be GRANTED and that the § 2254 Petition be DISMISSED.

## A.   Procedural History

After a bench trial, the Circuit Court convicted Swinson of statutory burglary with intent, two counts of robbery, and three counts of use of a firearm in the commission of a felony. The Circuit Court sentenced Swinson to an active term of twenty-eight years of incarceration. Commonwealth v. Swinson, Nos. CR09F000-85-01 to -06, at 1-2 (Va. Cir. Ct. Sept. 21, 2009).

Swinson appealed, arguing that insufficient evidence existed to sustain his convictions. Swinson v. Commonwealth, No. 2411-09-2, at 1 (Va. Ct. App.

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system in citations to the Attachment to the § 2254 Petition. The Court corrects the capitalization in the quotations from Swinson's submissions.

Aug. 3, 2010). The Court of Appeals of Virginia affirmed. Id. at 1, 7. Thereafter, the Supreme Court of Virginia refused Swinson's petition for appeal. Swinson v. Commonwealth, No. 101669, at 1 (Va. Jan. 20, 2011).

Swinson filed a petition for writ of habeas corpus in the Circuit Court raising claims similar to Claims 3 through 14 in the present § 2254 Petition. See Memorandum of Law in Support of Habeas Corpus at 8-56 (as paginated by the Circuit Court), Swinson v. Clarke, No. CL12HC-91 (Va. Cir. Ct. filed Dec. 20, 2011.) The Circuit Court denied Swinson's habeas petition. Swinson v. Clarke, No. CL12HC-91, at 15 (Va. Cir. Ct. July 19, 2013). The Supreme Court of Virginia refused Swinson's petition for appeal. Swinson v. Commonwealth, No. 131589, at 1 (Va. Jan. 9, 2014).

## B.   Analysis

### 1.   Exhaustion and Procedural Default (Claim 3)

The exhaustion requirement "'is rooted in considerations of federal-state comity,'" and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an

adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989). The Virginia courts refused to review the substance of Claim 3 in the present § 2254 Petition, because Swinson could have, but failed to raise this claim on

direct appeal. Swinson v. Clarke, No. CL12HC-91, at 4 (Va. Cir. Ct. July 19, 2013) (citing Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974); Elliott v. Warden, 652 S.E.2d 465, 467 (Va. 2007)).[3] Slayton constitutes an adequate and independent state procedural rule when so applied. See Mu'Min v. Pruett, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Swinson procedurally defaulted Claim 3. To the extent that Swinson asserts that ineffective assistance of counsel constitutes cause to excuse his default of Claim 3, that contention lacks merit for the reasons set forth infra Part B.4. Accordingly, it is RECOMMENDED that Claim 3 be DISMISSED.

## 2.   Applicable Constraints upon Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] Because the Supreme Court of Virginia summarily refused Swinson's petition for appeal, the Court presumes that the Supreme Court of Virginia refused the claims for the reasons stated by the Circuit Court. See White v. Johnson, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

### 3.   Sufficiency of the Evidence (Claims 1 and 2)

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.

In Claims 1 and 2, Swinson contends that insufficient evidence existed to convict him because "the circumstantial evidence identifying the petitioner as the perpetrator of the offenses is not sufficient to exclude every reasonable hypothesis of innocence." (Mem. Supp. § 2254 Pet. 4, ECF No. 2.) Swinson argues that the two elderly victims, Rose Whitt and Crowder Whitt, never identified Swinson as the robber, "an essential element of the offenses." (Id. at 5.) Swinson contends that Crowder Whitt's description of the robber "as short and stumpy" demonstrates that the robber "must have been somebody other than the Petitioner" who is "6'1" tall and weighed 350 pounds." (Id. at 6.) Swinson also points to Rose Whitt's identification of a person other than Swinson as the robber to demonstrate that he was not the robber. (Id.)

7

The Court of Appeals of Virginia aptly summarized the evidence of Swinson's guilt as follows:

> On April 8, 2008, at approximately 11:00 a.m., appellant's sister arrived at the home of her landlords, the victims, C.W. and R.W., to pay her monthly rent in cash. When the sister left the victims' home, she stopped at appellant's home, a duplex at 6144 Strathmore Road, a short distance from the victims' home. The sister told appellant's wife that she had just paid her rent to the victims. During this conversation, appellant was somewhere in the house. The sister routinely paid in cash and placed the money on the victims' kitchen table.
>
> About ten to fifteen minutes after the sister left the victims' house, C.W. was sitting in the kitchen with his wallet, several credit cards, and a portable phone on the kitchen table. Suddenly, a man burst through the back screen door into the kitchen. C.W. described the man as a "[s]hort and stumpy" white male, in his forties, and wearing a hooded sweatshirt with the hood pulled up. His face was not covered. Neither victim ever identified appellant as the intruder. Later, R.W. identified another individual as the gunman but he was later dismissed as a suspect. R.W., in a subsequent television interview, described the intruder as "a man in his 20's with a hooded sweatshirt." The victims had never seen the intruder before. At trial, C.W. testified that only those people familiar with the couple would know that they did not use the front door and that they normally asked visitors to come to the back door.
>
> The intruder pointed a black pistol at R.W.'s chest, telling her that he wanted their "money." The gunman first looked at the kitchen table. When the victims told the gunman that they did not have any money, he demanded R.W.'s purse.

The intruder, pointing his gun at C.W., took C.W.'s wallet, credit cards, and a phone from the table. He then followed R.W. through the house as she looked for her purse. After finding R.W.'s black purse, and taking a cell phone and a camera, the gunman walked into the yard with the stolen items. He stopped to look through the purse and then walked towards Strathmore Road. R.W. called 911, then followed the intruder in her automobile.

Police Officer Encinas arrived at the victims' home less than one minute after receiving the report of the robbery. C.W. pointed him in the direction that the gunman and his wife had gone. Officer Encinas located R.W., who directed the officer's attention to a white male, approximately three hundred feet away, wearing a blue hooded sweatshirt and blue sweatpants. The suspect was climbing an embankment to scale a fence behind the Strathmore residences. The gunman was less than one-tenth of a mile from the victims' home. The officer made no facial identification.

The suspect scaled the fence, carrying a gun in his right hand. After he cleared the fence, the gunman bent over and did "something in the leaves with his hands." Officer Encinas noticed that when the gunman stood up he no longer had a gun in his hand but he was still carrying a black purse. The gunman walked away towards the brick duplexes on Strathmore Road. Officer Encinas described the man he saw jumping over the fence as a "heavyset" "white male," wearing a hooded sweatshirt with the hood up.[4]

Officer Encinas lost sight of the gunman. A K-9 unit arrived and tracked the scent from the point where the gunman jumped over the fence. The tracking dog led police to an area less than two feet from where

---

[4] The police briefly detained a different suspect, not appellant, in the general vicinity, who was later released.

Officer Encinas had seen the gunman crouched down. There, in the backyard of the brick duplex house at 6144 Strathmore Road, appellant's residence, officers recovered C.W.'s credit cards, his home phone, and a black BB gun. The tracking dog continued to follow the scent for another fifty yards. The last location where the dog was able to follow the scent was in appellant's backyard.

C.W. identified the black BB gun recovered from appellant's backyard as "similar" to the weapon displayed during the robbery. He also identified the recovered credit cards, camera, and cell phone as those taken during the robbery. Appellant's DNA was found on the BB gun.

Appellant denied any involvement in the robbery. No fingerprint evidence implicated appellant in the offenses. A search of appellant's residence six months after the incident revealed no items stolen from the victims.

Appellant was convicted of two counts of robbery, statutory burglary, and three counts of use of a firearm in the commission of a felony.

Swinson v. Commonwealth, No. 2411-09-2, at 2-4 (Va. Ct. App. Aug. 3, 2010) (alteration in original) (footnote number altered).

In finding sufficient evidence to convict Swinson and rejecting his claim, the Court of Appeals of Virginia explained:[5]

---

[5] Swinson claims that the Virginia Court of Appeals erred in affirming his conviction under the Virginia standard for sufficiency, because the evidence failed to exclude every reasonable hypothesis of his innocence. On federal habeas review of a state conviction, Jackson provides the only appropriate standard of review for challenges to the sufficiency of the evidence. See Jackson, 443 U.S. and 324 (explaining that "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable

Appellant's challenge to the sufficiency of the evidence is limited to whether he was the perpetrator, not whether the offenses occurred.

. . . .

The thrust of appellant's sufficiency argument is that neither of the victims identified him as the gunman. Appellant further points to R.W.'s misidentification of a suspect, and the inaccurate description of the perpetrator given by both victims. We agree that there was no direct evidence identifying appellant as the gunman, but appellant's argument ignores the circumstantial evidence adduced by the Commonwealth.

. . . .

We first note that R.W.'s misidentification of another suspect, and any inaccurate description of the intruder, concerns the credibility of the witnesses and the weight afforded the victim's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730,732 (1995). See Peterson v. Commonwealth, 225 Va. 289, 295, 302 S.E.2d 520, 524 (1983) (stating that the credibility of witnesses and the weight to be given identification testimony is a matter for the jury). We review the facts "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). This standard requires us to "give due weight to inferences drawn from those facts by resident judges . . . ."

doubt"). The Court omits any discussion or reference to the Virginia standard.

*Malbrough v. Commonwealth*, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation omitted).

It was reasonable for the fact finder to conclude the intruder knew the victims' habits. He entered the backdoor, indicating he was aware of the victims' pattern of using the back door as the sole entry point. When the perpetrator entered and demanded money, he first looked at the kitchen table, where appellant's sister routinely deposited her rent money. It can further be inferred that appellant knew that the victims had recently received cash from appellant's sister. The intruder broke into the victims' home between ten and fifteen minutes after appellant's sister left the house and told appellant's wife that she had just paid her rent. Appellant was present somewhere in the house when that statement was made. The intruder did not look for jewelry or other valuables, only cash, indicating the intruder knew cash was on the premises.

After the robbery, the intruder ran towards appellant's house and discarded some of the stolen items, including the gun used in the robbery, in appellant's backyard. Appellant's DNA was found on the BB gun. While there was testimony appellant's [eight or nine-year-old] stepson owned a toy gun, there was no testimony the black BB gun was the one owned by the stepson. It must be remembered that a "similar" gun was seen in the hands of the gunman just moments before the police recovered it on the ground.

The fact finder rejected appellant's explanation of why his DNA was found on the gun. DNA evidence clearly indicates at some point in time, appellant had touched the BB gun. Other evidence proved that the gunman had a gun of like appearance in his possession just moments before the gun was discovered in appellant's backyard. . . .

From the intruder's entry into victims' residence, until the gun and stolen items were found in appellant's backyard, there had been an unbroken sequence pointing to

> appellant as the gunman.  R.W. followed the
> intruder as he left the house.  She pointed
> out the gunman to the officer who followed
> the gunman over the embankment and fence.
> He saw the gunman reach into a pile of
> leaves where the weapon and stolen items
> were recovered.
>
> We therefore conclude that the trial
> court did not err in finding the
> circumstantial evidence sufficient to
> convict appellant of the crimes charged.

Id. at 4-7 (third omission in original).  Even without
a positive eyewitness identification of Swinson as the
perpetrator, the Circuit Court found the testimony of
Officer Encinas and both victims credible, and
supported a finding beyond a reasonable doubt that
Swinson was the person who robbed the victims.  Thus,
after reviewing the evidence and credibility
determinations "in the light most favorable to the
prosecution, [a] rational trier of fact could have
found the essential elements of the crime beyond a
reasonable doubt." Jackson, 443 U.S. at 319 (citing
Johnson, 406 U.S. at 362).  For the same reason, any
claim that the Court of Appeals of Virginia erred in
affirming Swinson's convictions lacks merit.
Accordingly, it is RECOMMENDED that Claims 1 and 2 be
DISMISSED.

### 4.   Ineffective Assistance of Counsel
####     (Claims 4 - 14)

To demonstrate ineffective assistance of counsel,
a convicted defendant must show first that counsel's
representation was deficient and, second, that the
deficient performance prejudiced the defense.
Strickland v. Washington, 466 U.S. 668, 687 (1984).
To satisfy the deficient performance prong of
Strickland, the convicted defendant must overcome the
"'strong presumption' that counsel's strategy and
tactics fall 'within the wide range of reasonable
professional assistance.'" Burch v. Corcoran, 273
F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466
U.S. at 689).  The prejudice component requires a
defendant to "show that there is a reasonable
probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In Claim 4, Swinson argues that counsel rendered ineffective assistance "for her failure to file a motion for a new trial, to bring the Brady violation up on appeal[,] or to file a writ of err[or] after she discovered that the Commonwealth had suppressed exculpatory evidence . . . ." (Mem. Supp. § 2254 Pet. 16.)

Brady and its progeny "require[ ] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011). Accordingly, in order to obtain relief under Brady, a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." Id. (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)).

Swinson identifies this purported material, exculpatory evidence as "the police summary report written by Officer Encinas which contained the eye-witness statement of Barbara Santos which should have been given to the defense." (Mem. Supp. § 2254 Pet. 16.) Swinson claims that "Ms. Santos's [statement] establishe[d] that the suspect was still in possession of his gun after Officer Encinas lost sight of him running towards Strathmore Road" and "establishe[d] that the BB gun found in Petitioner's back yard was not the gun used in the robbery and that someone other than the Petitioner committed the robbery." (Id. at 17 (spelling corrected).) Swinson contends that counsel learned of Ms. Santos's statement to police when she read the presentence report. (Id.)

In rejecting this claim, the Circuit Court explained:

> The Court finds the petitioner has failed to show that Santos' statement was material and exculpatory, as he must to prove he was prejudiced by trial counsel's failure to

raise this issue in the trial court. . . .
The petitioner has identified Santos'
statement as only that she witnessed the
police pursuit, not that she had exculpatory
information to show the petitioner was not
the perpetrator of the offense.
The petitioner has not offered an affidavit
from Santos that demonstrates either that
she would have testified on his behalf, or
that she would have offered favorable
testimony. The Court finds this failure to
proffer fatal to his claim, as, without this
information, the petitioner cannot meet his
burden of showing he was prejudiced by trial
counsel's failure to raise this Brady claim.
Burger, 483 U.S. at 793; Muhammad, 274 Va.
at 19, 646 S.E.2d at 195. Accordingly, the
Court finds the petitioner cannot meet
either prong of the demanding Strickland
standard.

Swinson, No. CL12HC-91, at 14 (Va. Cir. Ct. July 19,
2013). The Court discerns no unreasonable application
of the law and no unreasonable determination of the
facts. See 28 U.S.C. § 2254(d)(1)-(2).

The Presentence Report that Swinson contends
alerted him to the existence of material and
exculpatory evidence provided:

Officer Encinas went back and interviewed
Barbara Santos who stated that she was
coming down Strathmore Road from the
direction of DSCR Logistics when she saw a
white man waving what she thought was a gun.
She stated she wasn't going to stop and she
floored her vehicle. Barbara Santos stated
that she pulled into her driveway and called
911. Ms. Santos stated that she saw a
police officer, which was in fact Officer
Encinas. Ms. Santos said she saw a red
pickup truck drive down Strathmore Road, two
to three houses further south and a male
dressed in all blue get out of the vehicle
and the vehicle took off at a high speed.
Ms. Santos saw the suspect run at a very
slow pace from the scene. Ms. Santos said
she never saw the person who was riding in

the red pickup get into this vehicle, but
she states it was the person she saw waiving
the gun.

Presentence Report at 2-2, Commonwealth v. Swinson,
Nos. CR09F000-85-01 through 06 (Va. Cir. Ct. filed
Sept. 10, 2009). Counsel explains that "[t]he
identity (not statement per se) of Santos was first
disclosed in the pre sentence report . . . ." See
Motion to Dismiss Ex. 6, at 2, Swinson v. Clarke,
No. CL12HC-91 (Va. Cir. Ct. filed Feb. 28, 2012).
     The Court fails to discern how this vague,
confusing account "establishe[d] that the suspect was
still in possession of the gun after Officer Encinas
lost sight of him running towards Strathmore Road."
(Mem. Supp. § 2254 Pet. 17.) The report contained no
specific information about where Ms. Santos saw "a
white man waving what she thought was a gun." See
Presentence Report at 2-2, Swinson, Nos. CR09F000-85-
01 to -06. In addition, counsel wisely eschewed
advancing a post-conviction or appellate challenge to
Swinson's convictions based on the third-hand account
of Ms. Santos summarized in the Presentence Report.
Contrary to Swinson's assertion, the report provided
no material, exculpatory evidence that Swinson was not
the robber. Thus, counsel cannot be faulted for
failing to challenge the conviction on this ground.
Counsel could have reasonably concluded that any
testimony Ms. Santos may have provided would have had
little impact on the Circuit Court's finding of guilt.
Additionally, counsel also could have reasonably
concluded that Ms. Santos's testimony would have
provided further support that Swinson was the robber.
Based on the summary in the Presentence Report, Ms.
Santos likely would have testified about why the
suspect seemingly disappeared, potentially could have
identified Swinson as the robber, and based on her
statement that she "saw the suspect run at a very slow
pace from the scene," further confirmed that Swinson,
a 350-pound man, was the suspect. Presentence Report
at 2-2, Swinson, Nos. CR09F000-85-01 to -06.
     Swinson also fails to demonstrate any prejudice
from counsel's failure to challenge Swinson's
conviction in a post-trial motion or on appeal based
on the summary of Officer Encinas's investigation. In
light of the substantial circumstantial evidence
demonstrating that Swinson was the robber, Swinson

fails to establish that, but for counsel's error, the Circuit Court would have found him not guilty. Accordingly, it is RECOMMENDED that Claim 4 be DISMISSED.

In Claims 5 and 14, Swinson faults counsel for failing to properly cross-examine the victims, Rose and Crowder Whitt, about whether they could positively identify Swinson as the robber. In rejecting these claims, the Circuit Court explained:

> The record demonstrates trial counsel called Rose Whitt as a defense witness, and elicited on direct examination that the victim had identified another suspect as the perpetrator from photographs she found on the sex offender registry. Trial counsel used a transcript of a conversation Rose Whitt had with a television reporter to refresh her recollection of the physical description she had given to that reporter. On direct examination by the Commonwealth, Crowder Whitt testified he did not get a good look at the perpetrator, and that he could "not really" tell the Court whether or not the petitioner was the perpetrator. On cross-examination, trial counsel elicited from Crowder Whitt that police never asked him to identify any suspects in the case, and that he had not seen any photographs of suspects.
>
> Trial counsel did not ask any additional questions regarding the identification, because she did not want to give the victims the opportunity to positively identify the petitioner as the perpetrator at trial. Developing a defense strategy for trial, which necessarily includes deciding the questions to ask the witnesses at trial, falls solely within defense counsel's discretion. Gonzalez v. United States, 553 U.S. 242, 249 (2008). Cross-examination is a matter of trial strategy which cannot be second guessed in a collateral habeas proceeding. Johnson v. Riddle, 222 Va. 428, 433, 281 S.E.2d 843, 846 (1981).

Swinson, No. CL12HC-91, at 5.  The Court discerns no unreasonable application of the law and no unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2).

Swinson demonstrates neither deficiency of counsel nor resulting prejudice.  Counsel elicited testimony from both victims from which a trier of fact could infer that neither victim could affirmatively identify Swinson as the robber.  Swinson fails to explain how any further questioning of the victims would have reinforced that inference.  Accordingly, it is RECOMMENDED that Claims 5 and 14 be DISMISSED.

In Claim 6, Swinson faults counsel for "fail[ing] to require that the actual BB gun recovered from the Defendant's back yard be shown in court . . . instead of allowing the Commonwealth to show a photograph of a gun . . . ."  (Mem. Supp. § 2254 Pet. 21.)  Swinson argues that the photograph failed to accurately depict the size of the gun and that if Mr. Whitt had seen the actual gun, he would have realized it was not the gun the robber used.  (Id.)  Swinson argues that Mr. Whitt testified that the gun used by the robber "was medium in size" but that "[t]he BB gun found in [Swinson's] back yard [was] very large . . . ."  (Id.)

In finding that this claim lacked merit, the Circuit Court concluded "that tactical decisions, such as deciding which objections to raise at trial, are part of the development of the defense strategy and lie solely within the province of counsel."  Swinson, No. CL12HC-91, at 6-7.  This Court agrees.  The evidence established that the photograph of the firearm depicted the firearm that police recovered along with other stolen items from Swinson's back yard.  Thus, counsel reasonably eschewed objecting to the introduction of the photograph of the gun.  Swinson also fails to demonstrate how requiring the Commonwealth to introduce the actual firearm would have altered the victim's identification of the BB gun.  At most, the victim testified that the photograph depicted a firearm "similar to" the firearm used by the robber.  (See June 29, 2009 Tr. 28.)  Swinson demonstrates no deficiency of counsel or resulting prejudice.  Accordingly, it is RECOMMENDED that Claim 6 be DISMISSED.

In Claims 7, 8, 10, and 13, Swinson faults counsel for failing to introduce certain evidence that would purportedly support Swinson's alibi defense.

Specifically, in Claim 7, Swinson claims that a
"purchase order receipt from Omega [Meats] dated April
8, 2008 . . . [would] show that the Petitioner was
approximately seven (7) miles away from the crime
scene when the robbery took place." (Mem. Supp.
§ 2254 Pet. 24 (spelling corrected) (citation
omitted).) In Claims 8 and 10, Swinson faults counsel
for failing to introduce bank and phone records
further supporting Swinson's contention that he was at
Omega Meats at the time of the robbery and
demonstrating that, based on his bank balance, Swinson
had no financial incentive to rob the victims.
Similarly, in Claim 13, Swinson faults trial counsel
for failing to file a motion of intent to introduce
evidence to establish an alibi and, subsequently,
failing to offer any of Swinson's alibi evidence at
trial.

In rejecting Claim 7 of the instant § 2254
Petition, the Circuit Court explained:

> The petitioner has not produced a copy of
> this [Omega Meats] receipt for the Court;
> without this copy, the Court cannot
> determine whether this receipt would have
> proved the things the petitioner claims.
> Burger [v. Kemp, 483 U.S. 776, 793 (1987)];
> Muhammad [v. Warden, 274 Va. 3, 19, 646
> S.E.2d 182, 195 (2007)]. The Court further
> finds trial counsel's interview with the
> company representative suggested the receipt
> may have been fraudulent, as the
> representative could not authenticate it,
> preventing trial counsel from introducing it
> at trial. Smith v. Commonwealth, 280 Va.
> 178, 183-84, 694 S.E.2d 578, 580-81 (2010)
> (discussing the requirements for introducing
> business records at trial by a custodian of
> the record, who could identify the document
> as one made in the regular course of
> business, and that such identification
> provided the necessary showing of
> trustworthiness that allowed the admission
> of the document over a hearsay objection).
> The Court finds the petitioner cannot meet
> either prong of the demanding Strickland
> standard.

Swinson, No. CL12HC-91, at 7.

In finding that Claim 8 of the instant § 2254 Petition lacked merit, the Circuit Court explained:

> The petitioner has not produced a copy of these [bank] statements for the Court; without these copies, the Court cannot determine whether these statements would have proved the things the petitioner claims. Burger, 483 U.S. at 793; Muhammad, 274 Va. at 19, 646 S.E.2d at 195. Further, the Court finds trial counsel examined the statements, and, contrary to the petitioner's assertions in his habeas corpus petition, the statements showed he maintained modest balances, had at least one overdraft within one month of the offense, and could not establish either the time of the transactions or whether those transactions were done in person. The Court finds the petitioner cannot show under the demanding Strickland standard either that counsel's performance was lacking, or that he was prejudiced as a result of counsel's actions.

Id. at 8.

Finally, in explaining and rejecting Claims 10 and 13 of the present § 2254 Petition, the Circuit Court found:

> The petitioner claims [the phone] records would have shown the petitioner was at Omega Meats at the time of the robbery using their phone to call his home and his wife's cell phone, and would have substantiated the petitioner's alibi. . . . [P]etitioner [also] alleges trial counsel was ineffective for failing to file a motion of intent to introduce evidence to establish an alibi for the petitioner, pursuant to Rule 3A:11(c), which the petitioner believed was going to be the primary defense at trial, and for failing to offer any alibi evidence at trial. The Court finds these claims without merit.
>
> The petitioner has not produced a copy of these records for the Court; without

these copies, the Court cannot determine whether these records would have proved the things the petitioner claims. Burger, 483 U.S. at 793; Muhammad, 274 Va. at 19, 646 S.E.2d at 195. The Court further finds trial counsel endeavored to investigate and obtain the phone records, filing subpoenas duces tecum requesting phone records from Comcast and AT&T; however, these records did not show the identity of the caller or the location of the caller on mobile phones. The Court credits trial counsel's determination that these records were neither persuasive nor relevant to trial. The Court holds that such tactical decisions, such as what evidence to present at trial, are part of the development of the defense strategy and lie solely within the province of counsel. Gonzalez [v. United States, 553 U.S. 242, 249 (2008)]; Taylor [v. Illinois, 484 U.S. 400, 418 (1998)]; accord Townes [v. Com., 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987)].

The Court further finds trial counsel diligently investigated the petitioner's alibi, but could not produce any evidence to support the petitioner's claims. The petitioner's wife told counsel, two days prior to trial, that she could not testify truthfully in his defense, told counsel about the location of the stolen property, and related several damaging allegations to petitioner's probation officer. Trial counsel shared the fruits of the investigation with the petitioner before trial, and the petitioner knew that the alibi defense could not be presented.

The Court holds the petitioner cannot demonstrate any prejudice from trial counsel's decision not to introduce an alibi defense unless he can show that the "evidence as to alibi covering the time at or before the crime is sufficient to render the presence of an accused impossible or highly improbable." Abbott v. Peyton, 211 Va. 484, 486-87, 178 S.E.2d 521, 523 (1971). Plainly, based on the information presented

> to counsel before trial, particularly that
> one of the defense witnesses could not
> testify truthfully in his behalf, the Court
> finds trial counsel's decision not to
> proceed with this evidence was objectively
> reasonable.
> The Court holds the petitioner cannot meet
> his burden of showing under the demanding
> <u>Strickland</u> standard either that counsel's
> performance was lacking, or that he was
> prejudiced as a result of counsel's actions.

<u>Id.</u> at 10-11 (first alteration in original). The
Court discerns no unreasonable application of the law
and no unreasonable determination of the facts. <u>See</u>
28 U.S.C. § 2254(d)(1)-(2).

For the first time in his § 2254 Petition,
Swinson submits the referenced Omega Meat receipt and
bank records, neither of which support Swinson's alibi
that he was at Omega Meats at the time of the robbery.[6]
(<u>See</u> Mem. Supp. § 2254 Pet. Exs. B, C2.) Counsel
wisely eschewed advancing an alibi defense that,
through her thorough investigation she learned, not
only lacked factual support but appeared to be
demonstratively false. <u>Cf.</u> <u>Boseman v. Bazzle</u>, 364 F.
App'x 796, 809-10 (4th Cir. 2010) (explaining that
counsel cannot be faulted for failing to present
evidence "'that . . . does not exist'" (quoting <u>Lewis
v. Horn</u>, 581 F.3d 92, 114 (3d Cir. 2009))).[7] Thus,

_____

[6]  Contrary to Swinson's contention, the receipt from
Omega Meats provides no time for his purchase on April
8, 2008 and states that Swinson paid for his purchase
in cash. The Court fails to discern why Swinson's
bank statement would reflect any debit or other
transaction when Swinson allegedly paid for the meat
in cash. Moreover, Swinson's bank statement also
provides no time for his transactions other than the
date.

[7]  For the first time in his Objections to the Motion
to Dismiss, Swinson attaches a letter in which
Swinson's wife alleges she never told counsel "that
Boyd committed the robbery or where anything was."
(Mem. Supp. § 2254 Pet. Ex. U, at 1.) Swinson's wife
never signed this letter, much less swore to the
letter under penalty of perjury. Nevertheless, even

Swinson demonstrates neither deficiency of counsel nor resulting prejudice.   Accordingly, it is RECOMMENDED that Claims 7, 8, 10, and 13 be DISMISSED.

In Claim 9, Swinson argues that counsel rendered ineffective assistance by "fail[ing] to request a continuance for the non-appearance of a subpoenaed material witness inducing the Petitioner to proceed absent Celeste Thomas who was subpoenaed to validate a [receipt] from Omega Meats."   (Mem. Supp. § 2254 Pet. 28.)   Swinson claims that counsel told him on the morning of trial that Celeste Thomas would not be available that day to testify.   (Id. at 29.)   In finding this claim lacked merit, the Circuit Court explained:

> The petitioner has not supplied an affidavit from this witness showing either that she would have testified, or that she would have offered favorable testimony on the petitioner's behalf.   The Court finds this failure to proffer is fatal to his claim.   Burger, 483 U.S. at 793; Muhammad, 274 Va. at 19, 646 S.E.2d at 195.
> The Court further finds trial counsel did contact Celeste Thomas, and this witness could not recall the events the petitioner alleged had occurred, and expressed doubt about whether the petitioner's account of the events were credible. When trial counsel attempted to investigate the petitioner's alibi defense, she could not substantiate his statements regarding his whereabouts on the day of the crime.
> Additionally, the Court finds trial counsel's decision not to call a witness on the petitioner's behalf is entitled to "enormous deference."   See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("calling some witnesses and not others is the epitome of a strategic decision"); United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)

---

if the Court were to credit Swinson's wife's statement over counsel's, the Court maintains that counsel's determination not to advance the flimsy alibi defense was imminently reasonable.

> (decision not to call witness entitled to "enormous deference" and decision was objectively reasonable in any event). Given that Thomas offered no favorable evidence for the petitioner, the Court holds trial counsel's decision not to call her at trial was objectively reasonable.
>
> Accordingly, the Court finds the petitioner has filed to meet his burden under the demanding Strickland standard to show either that counsel's performance was lacking, or that he was prejudiced as a result.

Swinson, No. CL12HC-91, at 8-9. The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2).

As previously discussed, counsel thoroughly investigated Swinson's alibi defense and found it not only lacked factual support, but was likely false. Counsel cannot be faulted for failing to request a continuance for a witness who would not provide favorable testimony to the defense. For the same reason, Swinson fails to demonstrate any prejudice from counsel's failure to request a continuance. Counsel explained that, after interviewing Celeste Thomas, counsel determined that Ms. Thomas would not testify as Swinson suggested, and counsel made the wise and strategic decision not to request a continuance in order for her to testify. Cf. Byram v. Ozmint, 339 F.3d 203, 209-10 (4th Cir. 2003) (finding no ineffective assistance where counsel adequately investigated and made strategic decision not to present evidence that could have harmed the defense). Swinson fails to demonstrate that counsel rendered ineffective assistance, and, accordingly, it is RECOMMENDED that Claim 9 be DISMISSED.

In Claim 11, Swinson contends that counsel failed to elicit testimony from Swinson's physician, Dr. Barrington Bowser, and failed to submit updated medical records that would demonstrate that Swinson had a physical disability that would make it impossible for him to scale the fence as described by Officer Encinas. In rejecting this claim, the Circuit Court explained:

> Trial counsel interviewed Dr. Bowser prior
> to trial, and determined that Dr. Bowser
> would testify that the petitioner could have
> accomplished the physical task of scaling
> the fence.    Trial counsel believed Dr.
> Browser would have been a hostile witness,
> and made the strategic decision to refuse to
> call him as a witness.
> The Court finds this tactical decision is
> part of the development of the defense
> strategy and lie solely within the province
> of counsel.    Gonzalez, 553 U.S. at 249;
> Taylor, 484 U.S. at 418; accord Townes, 234
> Va. at 320, 362 S.E.2d at 657.    The Court
> further finds the petitioner has not offered
> any evidence to substantiate his claim that
> any favorable medical testimony would have
> available    to    his    defense    at    trial.
> Muhammad, 274 Va. at 16, 646 S.E.2d at 193
> (holding a claim that trial counsel should
> have presented a mental health defense
> requires the petitioner to "proffer the
> records from [ ] mental health exams" in
> order to "demonstrate that the mental health
> evidence" was both "available" at the time
> of trial and "would have aided in his
> defense").   Accordingly, the Court holds the
> petitioner cannot show under the demanding
> Strickland standard either that counsel's
> performance was lacking, or that he was
> prejudiced as a result of counsel's actions.

Swinson, No. CL12HC-91, at 11-12 (alteration in
original).    The Court discerns no unreasonable
application of the law and no unreasonable
determination of the facts.    See 28 U.S.C.
§ 2254(d)(1)-(2).

     Counsel submitted Swinson's medical records
during the defense case that indicated that Swinson
had a total bilateral hip replacement in 2002.  (June
29, 2009 Tr. 106).    Thus, the trier of fact could
infer that Swinson may have had some physical
limitations.    Again, counsel wisely eschewed calling
Dr. Bowser who would have potentially hurt the defense
by testifying that Swinson's physical limitations
would not have prevented him from climbing the fence.
Thus, counsel was not deficient for failing to call a

witness that could hurt, not help, Swinson's defense. Accordingly, Swinson demonstrates no deficiency of counsel or resulting prejudice, and it is RECOMMENDED that Claim 11 be DISMISSED.

In Claim 12, Swinson argues that "counsel was ineffective because she failed to bring to light the accurate measurements from the crime scene, in particular, the distance, [and] landmarks associated with the flight path from the victim's home to the place where the perpetrator eluded a police pursuit." (Mem. Supp. § 2254 Pet. 40.) Swinson faults counsel for "allow[ing] Officer Encinas" to describe the distance from the Crowder's home to the fence as one-tenth of a mile. (Id.) Swinson argues that Officer Encinas purposely "down-play[ed] the actual distance . . . because he knew before trial that the Petitioner has physical disabilities which would have made it improvable that it was the Petitioner that he was chasing." (Id. at 40-41.) Swinson contends that actual distance was four-tenths of a mile. (Id. at 41.)

In rejecting this claim, the Circuit Court explained:

> The Court finds the petitioner failed to allege how the officer's opinion as to the distance was either improbable or inaccurate, and that counsel had no basis for objection on these grounds. The Court finds this claim fails to demonstrate either prong of the demanding Strickland test.

Swinson, No. CL12HC-91, at 13. The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2).

Swinson fails to demonstrate how this purported discrepancy in distance would cast doubt on Officer Encinas's credible testimony that he observed the robber scale a fence close to the victims' home. Additionally, Officer Encinas had a photograph of the area in question and circled on the photograph both where the robbery occurred and where he observed the robber scaling the fence. (June 29, 2009 Tr. 35-36.) Thus, counsel reasonably eschewed advancing the challenges Swinson urges here. (Mem. Supp. § 2254 Pet. 40.) Moreover, as previously discussed, contrary

26

to Swinson's assertion, no evidence existed demonstrating that Swinson had a disability that would prevent him from scaling the fence. Swinson fails to demonstrate deficiency or resulting prejudice from counsel's failure to introduce measurements of the crime scene. Accordingly, it is RECOMMENDED that Claim 12 be DISMISSED.

(Report and Recommendation entered January 29, 2015) (alteration in original).

## II.  STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION

"The magistrate [judge] makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing Mathews v. Weber, 423 U.S. 261, 270-71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate[] [judge's] report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." Thomas v. Arn, 474 U.S. 140, 147 (1985). When reviewing the magistrate judge's recommendation, this Court "may also receive further evidence." 28 U.S.C. § 636(b)(1).

### III. SWINSON'S OBJECTIONS

Swinson's thirty-pages of objections do not comply with the Magistrate Judge's directive that "[s]uch objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings." (Report and Recommendation 31 (citation omitted).) Swinson's submission fails to set forth specific numbered objections and instead generally attacks every facet of the Report and Recommendation.

Swinson's objections essentially reiterate his lengthy arguments from his 2254 Petition and find fault on nearly every page of the Report and Recommendation for not agreeing with his positions. Swinson faults the Magistrate Judge's findings for reasons such as, "[t]he merits of Petitioner's claims were not properly adjudicated in state court," (Objs. at 4), "the state court failed to review all of the evidence," (id.), the state court made false statements, (id. at 5), and that the "Petitioner still contends that there was insufficient evidence to convict him." (Id. at 6.) The mere reiteration of earlier arguments is not a proper objection.

Next, instead of challenging the factual or legal conclusions of the Magistrate Judge, Swinson attacks alleged errors in the Court of Appeals of Virginia's and the Circuit Court's summary of the evidence as quoted by the Magistrate Judge. For example, Swinson finds error in the Circuit Court's

28

statement that the victim identified the gun as similar to the
gun recovered from the back yard, because "the record reflects
C.W. identified a picture of a gun . . . and was never shown the
actual BB gun . . . ."  (Id. at 6 (emphasis added).)  Swinson
also claims that the Circuit Court's summary of the facts that
stated the intruder "discarded some of the stolen items" was
incorrect because no witness used the word "discarded."  (Id. at
7.)  Thus, he faults the Magistrate Judge for quoting the
Circuit Court's description of the evidence.  (Id.)  To the
extent that Swinson challenges the state court's summary of the
evidence, or the conclusion that sufficient evidence existed of
his guilt, his objections are overruled.  The Court has reviewed
the record and finds the evidence of Swinson's guilt to be both
substantial and compelling.

Next, Swinson reargues each of his ineffective assistance
of counsel claims.  Swinson explains:

> The findings of the Circuit Court Swinson v.
> Clarke No. CL12HC-91 are in error and any findings by
> the Supreme Court based on this court[']s findings are
> also in error and the findings-summary-recommendations
> of the Magistrate Judge are also in error since they
> were all based on an inaccurate findings of the
> Circuit Court.

(Id. at 9.)  Thus, Swinson finds fault in the Report and
Recommendation not based on the Magistrate Judge's conclusions,
but based on the state court's findings and conclusions.

Swinson then continues to reargue his claims as presented in his § 2254 Petition.

For example, Swinson argues that the Magistrate Judge erred in concluding that Swinson had demonstrated neither deficiency of counsel nor prejudice with regard to the statement of Barbara Santos that is in the presentence report. Swinson claims that the Magistrate Judge's conclusions about the impact of Santos's statements on Swinson's trial are "conjecture." (Id. at 12.) Swinson claims that he "identified the existence of evidence favorable to the accused (PSI report summary of a police report which contains a statement made by a witness who[se] testimony would have benifited [sic] the defense if it would have been provided before trial)." (Id. at 14.) That contention lacks merit. As the Magistrate Judge appropriately concluded, the report contained no exculpatory evidence, and counsel reasonably decided not to advance a challenge based on a third-hand account of a witness. And, the Magistrate Judge correctly concluded that Swinson had not demonstrated prejudice.

In the next few pages of his objections, Swinson merely states that he "objects to the Magistrate Judge's summary and recommendation" (see, e.g., id. at 16, 17, 19, 25, 27) and reargues his claims. The record, however, shows that the Magistrate Judge correctly concluded that Swinson had not

demonstrated that counsel rendered ineffective assistance. Swinson's objection to the contrary is overruled.

Swinson believes that the Magistrate Judge erred by concluding that counsel rendered no ineffective assistance when she purportedly failed to appropriately cross-examine the victims about whether they could identify Swinson. (Id. at 16-17.) The record demonstrates that neither victim could affirmatively identify Swinson as the robber. Thus, the Magistrate Judge appropriately concluded that "Swinson fails to explain how any further questioning of the victims would have reinforced that inference." (Report and Recommendation 19-20.)

Swinson also believes that the Magistrate Judge erred with respect to his conclusion that Swinson had demonstrated neither deficiency of counsel nor prejudice with regard to his various claims that counsel failed to investigate, interview or subpoena witnesses, or introduce evidence to support Swinson's alibi defense that he was at Omega Meats at the time of the robbery. (See Objs. 19-25.) As the Magistrate Judge appropriately explained: "[C]ounsel wisely eschewed advancing an alibi defense that, through her thorough investigation she learned, not only lacked factual support but appeared to be demonstratively false." (Report and Recommendation 25 (citation omitted).) Similarly, Swinson fails to demonstrate any error in the Magistrate Judge's conclusion that counsel reasonably eschewed

advancing a line of defense regarding his physical limitations. (See Objs. 25-28.)

The Court has reviewed the record, Swinson's lengthy objections, and the legal and factual conclusions in the Report and Recommendation, and finds no error. Swinson's objections will be overruled.

## IV.   CONCLUSION

Swinson's Objections (ECF No. 23) will be overruled. The Report and Recommendation will be accepted and adopted. The Motion to Dismiss (ECF No. 9) will be granted. Swinson's Motion for Discovery (ECF No. 16) and Motion for an Evidentiary Hearing (ECF No. 17) will be denied as moot. Swinson's claims and the action will be dismissed. The Court will deny a certificate of appealability.

The Clerk is directed to send a copy of this Memorandum Opinion to Swinson and counsel of record.

_____ /s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 1, 2015

32